Micha S. Liberty
micha@libertylaw.com
LIBERTY LAW
California Bar No. 215687
1999 Harrison Street, Ste. 1800
Oakland, CA 94612
Tel: (510) 645-1000

Helene M. Weiss, *Pro Hac Vice Forthcoming*
heleneweiss@marsh.law
MARSH LAW FIRM PLLC
31 Hudson Yards, 11th Fl
New York, NY 10001
Tel: (212)372-3030
Fax: (833) 210-3336

Cori J. Iacopelli, *Pro Hac Vice Forthcoming*
coriiacopelli@marsh.law
MARSH LAW FIRM PLLC
31 Hudson Yards, 11th Fl
New York, NY 10001
Tel: (212) 372-3030
Fax: (833) 210-3336

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JANE DOE,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS WESLEY PENTZ a/k/a "DIPLO," MAD DECENT PROTOCOL, LLC, MAD DECENT, LLC, MAD DECENT PROPERTIES, LLC, SILK CITY TOURING, INC., LOCKETT & LAZER, LLC, and HOLLERTRONIX PRODUCTIONS, INC.,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR A JURY TRIAL**<br><br>**Violations of 15 U.S.C. § 6851 and C.A. Civ. Code §§ 52.4 and 1708.5** |

The Plaintiff Jane Doe, on her own behalf, and through her attorneys of record, Micha S. Liberty of Liberty Law and Helene M. Weiss and Cori J. Iacopelli of Marsh Law PLLC, alleges for her complaint as follows:

## I. PRELIMINARY STATEMENT

1. Plaintiff files this action for damages and other relief arising out of Defendants' violations of federal statute 15 U.S.C. § 6851(b)(1)(A), and related California state law claims.

2. 15 U.S.C. § 6851(b)(1)(A) allows victims of revenge pornography crimes and/or distribution of their intimate visual depiction to recover actual damages sustained or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorneys' fees and other litigation costs reasonably incurred.

3. Plaintiff need not show that any Defendant was criminally prosecuted for them to be civilly liable under federal law. *See Smith v. Husband,* 376 F. Supp 2d 603 (E.D. Va. 2005) *citing Sedima S.P.R.L. v. Imrex Co.*, Inc., 473 U.S. 479 (1985) (finding that a civil cause of action based on a violation of a criminal predicate can proceed without a criminal conviction).

4. This action is also brought under the California civil revenge pornography statute Cal. Civ. Code § 1708.85, as well as California's misappropriation statute Cal. Civ. Code § 3344 and other related state law claims arising from Defendant Thomas Wesley Pentz a/k/a "Diplo's" (hereinafter "Diplo") conduct when he used social media, his business entities, and his platform as a well-known music artist to lure, entice, and solicit women for the ultimate goal of engaging in sexual activity with them and/or recording that sexual activity without their consent. Plaintiff was one of those victims. As a result, Plaintiff has suffered physical, psychological, and emotional injuries.

5. Plaintiff respectfully submits her Complaint for damages and makes the following

2

averments:

## II. NATURE OF THE CASE

6. Defendant Diplo is a well-known American DJ, songwriter, and music producer based in Los Angeles, California. He rose to fame in the mid-2000's when he started gaining attention for his innovative approach to producing and DJ-ing. After that, Defendant Diplo gained worldwide recognition for his collaborations with various artists, including Beyonce, Justin Bieber, M.I.A., Sia, and Skrillex.

7. Defendant Diplo began performing at concerts in 2004. The first concert he played was at The Showbox in Seattle, Washington. From there, he went on to play at venues across the country, including The Fader Fuse Rec and Pier 94 in New York, New York; XS Nightclub in Las Vegas, Nevada; Lake Tahoe Community College in Reno, Nevada; and Los Angeles Plaza in Los Angeles, California. Throughout his career, Defendant Diplo has played in 1,367 concerts worldwide.

8. Defendant Diplo has also been featured in TV shows and movies, such as 21 Jump Street and Shaq Life; and has been featured in various news articles including those published by the Los Angeles Times, the New York Post, Vanity Fair, CNN, and NBC News.

9. Throughout the 2000s, Diplo became involved with music-related ventures called Hollertronix Productions, Inc. and Silk City Touring, Inc. Hollertronix Productions is still widely revered as a famous and successful discography.

10. In approximately 2005 or 2006, Diplo founded the record label Mad Decent. Since its creation, Mad Decent has gained worldwide success. Mad Decent has been called Diplo's "era-defining label." Some notable artists with Mad Decent are Major Lazer, Aluna, Yellow Claw, and more.

11. In 2014, it was reported that Defendant Diplo had 1.2 million Facebook followers and 4.2 million Soundcloud followers. In 2019, it was reported that Defendant Diplo had over 5.4 million followers on Instagram and 2.6 million followers on Twitter. Today, Defendant Diplo has over 6.2 million followers on Instagram and has a large following on YouTube and TikTok as well. Indeed, numerous news articles have posted about Diplo's presence on social media, including quotes that "Diplo is Doing Social Media Better Than You" and "Diplo Mastered a Lovable Influencer on Instagram and Twitter."

12. In 2023, it was reported that Defendant Diplo's net worth is approximately $50 million, with his annual income totaling $20 million per year. As is evident by this Complaint and the public reporting on Defendant Diplo, he was (and continues to be) an enormously powerful man.

13. Defendant Diplo's music career gave him the fame, platform, and megaphone to reach countless people. Unfortunately, he used that voice and his power to attract young women and teenage girls into engaging in romantic and/or sexual relationships with him.

14. Throughout his career, Defendant Diplo has been known as a partier. His fans often saw him post Instagram stories featuring him with underage and young girls at parties he threw at his mansion in California. Diplo was often spotted partying with young girls and women in New York City as well. Not only that, but he featured provocative photographs and commentary throughout his social media accounts. On one instance, Diplo even posted a photograph of his erect penis on Instagram. On another occasion, he posted a photograph of his buttocks on Instagram.

15. The online platform Reddit is often filled with discussions regarding Diplo's behavior with young women and teenage girls. Discussions on Reddit include comments that, "for years, teenage girls have been posting photos on their [Instagram] stories of them inside his

4

mansion or hanging out at his pool. He's been a known creep for a long time…".

16.     Between 2020 and 2023 (and likely before that) allegations of sexual abuse, revenge pornography, and grooming surfaced against Diplo. In October of 2020, a young woman, Marchel ("Shelly") Auguste, alleged that Diplo sexually assaulted her, recorded her in sexually explicit activities without her consent, and distributed the images and videos without her consent. She then filed a police report with the Los Angeles County Police Department. Shortly thereafter, she initiated a civil lawsuit against Diplo and obtained a restraining order against him.

17.     Subsequently, a young rapper, Azealia Banks, spoke out about her experience with Diplo, saying on her podcast that she used to have sex with Diplo when she was seventeen years old, and he was in his thirties. She said that "Diplo definitely found me on f-ing Myspace. I always give him credit for f-ing launching my career off, but yeah, I had to give him some teenage [vagina] to do it. He's always been preying on young ethnic girls."

18.     Upon information and belief, in October 2020, Quen Blackwell, then nineteen-years-old, released a TikTok explaining that she was living with then forty-two-year-old Diplo. Numerous fans expressed their concern over the living situation. Upon information and belief, Blackwell shared text messages between her and Diplo wherein he stated, "I only went and touched your nipple once, that don't count as grooming."

19.     In July 2021, Diplo was accused of coercing a woman into performing oral sex on him in 2019. The alleged victim stated that she had been invited to an afterparty at one of Diplo's concerts in Las Vegas, Nevada, where he plied her with marijuana and alcohol. Soon after, Diplo allegedly forced the woman into his hotel room where he did not let her leave until she performed oral sex on him.

20.     Plaintiff is one individual who is a victim of revenge pornography by Diplo.

Plaintiff brings this action to recover for the emotional and physical injuries she endured because of Diplo's actions and to make sure no one else is forced to suffer the privacy invasions and physical and mental trauma she felt and continues to feel to this day.

### III. PARTIES

21. Plaintiff is and at all relevant times was a citizen of the United States and a resident of the State of New York.

22. Plaintiff is an adult female currently residing in Kings County, New York.

23. Plaintiff proceeds in this litigation under pseudonym, "Jane Doe," pursuant to Article 1, § 1 of the California Constitution.

24. Defendant Thomas Wesley Pentz, also known by his professional name "Diplo," is an adult United States citizen and a resident of the State of Nevada.

25. Upon information and belief, at all relevant times, Defendant Diplo has also been known under the names "Diplodocus," "Wesley Pentz," "Wes Pentz," "Wes Gully," and/or "Tom Pentz."

26. Upon information and belief, Defendant Diplo transacts business within the Central District of California.

27. At all relevant times, Defendant Diplo was an adult male over the age of 21.

28. Upon information and belief, at all relevant times, Defendant MAD DECENT PROTOCOL, LLC was a limited liability company organized and existing under the laws of the State of Pennsylvania with its headquarters in New York City located at 12 W. 37th Street, Fl. 10, New York, NY 10018. Mad Decent Protocol, LLC also owns, operates, and conducts business in California, with its registered California office located at 350 S. Beverly Dr., Suite 210, Beverly Hills, CA 90212.

29. To the extent that Mad Decent Protocol, LLC was a different entity, corporation, or organization during the time when Plaintiff was sexually exploited and continues to be, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Mad Decent Protocol, LLC.

30. To the extent Mad Decent Protocol, LLC is a successor to a different entity, corporation, or organization which existed during the time when Plaintiff was sexually exploited, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named as Mad Decent Protocol, LLC.

31. Upon information and relief, at all relevant times, Defendant MAD DECENT, LLC, was a limited liability company existing under the laws of the State of California with its headquarters located at 26511 Via Desmonde Lomita, CA 90717.

32. To the extent that Mad Decent, LLC was a different entity, corporation, or organization during the time when Plaintiff was sexually exploited and continues to be, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Mad Decent, LLC.

33. To the extent Mad Decent, LLC is a successor to a different entity, corporation, or organization which existed during the time when Plaintiff was sexually exploited, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named as Mad Decent, LLC.

34. Upon information and relief, at all relevant times, Defendant MAD PROPERTIES, LLC, was a limited liability company organized and existing under the laws of the State of Pennsylvania with its principal place of business located at 605 N. 11th Street, Philadelphia, PA 19123.

35. To the extent that Mad Properties, LLC was a different entity, corporation, or organization during the time when Plaintiff was sexually exploited and continues to be, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Mad Decent Properties, LLC.

36. To the extent Mad Decent Properties, LLC is a successor to a different entity, corporation, or organization which existed during the time when Plaintiff was sexually exploited, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named as Mad Decent Properties, LLC.

37. All such Mad Decent-related entities, corporation, or organizations are collectively referred to herein as "Mad Decent."

38. Upon information and belief, at all relevant times, Defendant SILK CITY TOURING, INC. was a New York foreign business corporation authorized to conduct business in the State of New York. Silk City Touring, Inc. is registered at 99 Washington Ave., Suite 805a, Albany, NY 12210.

39. To the extent that Silk City Touring, Inc. was a different entity, corporation, or organization during the time when Plaintiff was sexually exploited and continues to be, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Silk City Touring, Inc.

40. To the extent Silk City Touring, Inc. is a successor to a different entity, corporation, or organization which existed during the time when Plaintiff was sexually exploited, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named as Silk City Touring, Inc.

41. Upon information and belief, at all relevant times, Defendant LOCKETT &

LAZER, LLC, was a limited liability company existing under the laws of the State of California. Lockett & Lazer, LLC is registered and located at 3839 Carnavon Way, Los Angeles, CA 90027.

42. To the extent that Lockett & Lazer, LLC was a different entity, corporation, or organization during the time when Plaintiff was sexually exploited and continues to be, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Lockett & Lazer, LLC

43. To the extent Lockett & Lazer, LLC is a successor to a different entity, corporation, or organization which existed during the time when Plaintiff was sexually exploited, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named as Lockett & Lazer, LLC

44. Upon information and belief, at all relevant times, Defendant HOLLERTRONIX PRODUCTIONS, INC. was a corporation existing and conducting business in the State of New York with its principal place of business located at 12 W. 37th Street, Fl. 10, New York, NY 10018.

45. To the extent that Hollertronix Productions, Inc. was a different entity, corporation, or organization during the time when Plaintiff was sexually exploited and continues to be, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in this lawsuit as Hollertronix Productions, Inc.

46. To the extent Hollertronix Productions, Inc. is a successor to a different entity, corporation, or organization which existed during the time when Plaintiff was sexually exploited, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named as Hollertronix Productions, Inc.

47. Upon information and belief, at all times mentioned herein, each of the Defendants was an agent, servant, employee, partner, joint ventures, franchisee, alter ego, aider and abettor,

and/or co-conspirator and engaged in a common or common enterprises with each of the remaining Defendants herein, and was at all relevant times acting within the course and scope of said agency, service, employment, partnership, joint venture, franchise, unlawful enterprise, conspiracy, and/or lawful or unlawful conduct as herein alleged.

48. Upon information and belief, at all relevant times mentioned herein, each of the Defendants designated herein are responsible in some manner or is otherwise legally liable to Plaintiff for the injuries complained of herein.

## IV. JURISDICTION AND VENUE

49. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brings this action pursuant to the federal revenge pornography statute 15 U.S.C. § 6851(b)(1)(A).

50. This Court has supplemental jurisdiction of the state law claims recounted below, pursuant to 28 U.S.C. § 1367(a), because all the claims alleged herein are related to the claims with original jurisdiction and form part of the same case or controversy.

51. This Court has personal jurisdiction over Defendants Mad Decent Protocol, LLC, Mad Decent, LLC, and Lockett & Lazer, LLC because each entity owns, operates, controls, and/or conducts/transacts businesses within the Central District of California located in Los Angeles County, California.

52. This Court has personal jurisdiction over Defendant Diplo because he has significant contacts with the Central District of California such that he is subject to the personal jurisdiction of the Court.

53. This Court also has personal jurisdiction over Defendant Diplo and the remaining Defendants for the additional reason that Defendants have engaged in substantial, systematic, and

continuous contacts with this State by, *inter alia*, regularly conducting and soliciting business in this State and District and deriving substantial revenue from products and/or events and/or services provided to persons and/or businesses and/or platforms in this State and District.

54. Defendants have significant contacts in each of the States and Territories of the United States, such that personal jurisdiction would be proper in any of them.

55. A substantial part of the events and omissions giving rise to Plaintiff's causes of action occurred in the Central District of California. Pursuant to 28 U.S.C. § 1391(a), venue is proper in said District.

## V. BACKGROUND FACTS

56. Plaintiff repeats and re-alleges the above allegations.

57. Beginning in approximately April 2016, when Plaintiff was twenty-one years old, Plaintiff and Defendant Diplo began communicating on Snapchat. Between April 2016 and June 2016, Diplo maintained continuous contact with Plaintiff, exchanging pornographic images with her.

58. In or around approximately June 2016, Plaintiff met Defendant Diplo for the first time when he invited her to his hotel room in Manhattan, New York.

59. Between June 2016 and October 2023, Plaintiff and Defendant Diplo maintained an intimate relationship, including having sex. During that time, Plaintiff made it known that she did not want Defendant Diplo recording them engaging in sexual activities without her explicit consent nor did she want him to distribute images and/or videos to third parties and never gave him consent to do so.

60. Between June 2016 and October 2023, Defendant Diplo and Plaintiff exchanged intimate and/or nude photographs and videos. Plaintiff always requested that Defendant Diplo keep

11

the images and videos confidential. On some occasions, Plaintiff gave Defendant Diplo permission to record them having sex, but never gave him permission to distribute those images and videos to third parties and reiterated that he was not to record them without her explicit consent.

61. Plaintiff trusted Defendant Diplo and believed that he would respect her wishes to keep their sexual images and videos confidential and that he would not record them having sex without her consent.

62. Between 2018 and 2023, without Plaintiff's knowledge or consent, Defendant Diplo recorded himself having sex with Plaintiff on numerous occasions and disclosed and/or distributed the images and videos to third parties. Defendant Diplo shared the images and/or videos with the third parties via text messaging and Snapchat.

63. Upon information and belief, Defendant Diplo has continued to disclose and/or distribute Plaintiff's intimate images and/or videos from 2018 through present.

64. In November 2023, Plaintiff was contacted for the first time by a third-party. The third-party told Plaintiff that she was in possession of images and videos of Plaintiff and Defendant Diplo having sex. The third-party told Plaintiff that she received the intimate material from Defendant Diplo on Snapchat on October 14, 2018. The images and videos depicted Plaintiff's genitals, buttocks, and face. One of the videos sent to this third-party also captured Plaintiff's voice while engaged in sexually explicit activities.

65. Plaintiff and the third-party did not know one another nor did they have a relationship prior to the foregoing interaction.

66. Thereafter, on November 7, 2023, Plaintiff reported the disclosure and/or distribution of the images and videos depicting her by Defendant Diplo to the 83rd Precinct of the New York Police Department ("NYPD").

67. On November 11, 2023, the NYPD issued a warrant for Defendant Diplo's arrest for dissemination of intimate images and/or videos depicting Plaintiff.

68. At all relevant times, Plaintiff did not consent to the recording of her and Defendant Diplo having sex.

69. At all relevant times, Plaintiff did not consent to the disclosure and/or distribution of images and videos by Defendant Diplo, nor did she expressly or impliedly acquiesce to Defendant Diplo's disclosure and/or distribution of sexually explicit images and videos against her.

70. Plaintiff has and will continue to suffer personal injury from the disclosure and/or distribution of the intimate images and/or videos depicting her genitals and face while she was engaged in sexually explicit activity. The permanent harm she proximately suffers includes but is not limited to extreme and severe emotional distress with physical manifestations, anxiety, depression, and loss of privacy.

## VI. CAUSES OF ACTION

**COUNT I: VIOLATION OF 15 U.S.C. § 6851(b)(1)(A)**
**(Civil Action Relating to Disclosure of Intimate Images)**

71. Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully incorporated herein.

72. 15 U.S.C. § 6851, entitled "Civil action relating to disclosure of intimate images," ("CARDII"), provides that any individual who is a victim of their intimate visual depiction being disclosed, without their consent, and where such disclosure was made by a person knowingly or with reckless disregard of whether that individual has not consented, may recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

73. A photograph is considered an "intimate visual depiction" under this section if it depicts "the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual". 15 U.S.C. § 6851(a)(5)(A)(i).

74. When Defendant Diplo disclosed Plaintiff's intimate visual depiction via text message to a third-party, and possibly others, he did so in or affecting interstate commerce, or using a means or facility of interstate or foreign commerce, in violation of 15 U.S.C. § 6851(b)(1)(a). *United States v. Morgan*, 748 F.3d 1024, 1033 (10th Cir. 2014) (there is no question that cell phones are instrumentalities of interstate commerce); *United States v. Allen*, 86 F. 4th 295, 299 (6th Cir. 2023) ("cellphones were instrumentalities of interstate commerce").

75. When Defendant Diplo disclosed the intimate visual depiction of Plaintiff, he knew, or recklessly disregarded, that Plaintiff never consented to the disclosure of the depiction.

76. The images and/or videos depicting Plaintiff's genitals and buttocks while she is having sex that were disclosed by Defendant Diplo constitute an "intimate visual depiction" and is subject to the protections of CARDII.

77. Plaintiff intends to prove her actual damages as a result of Defendant Diplo's actions.

78. At a minimum, Plaintiff intends to seek statutory liquidated damages in the amount of $150,000 against Defendant Diplo, as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate.

**COUNT II: VIOLATION OF CAL. CIV. CODE § 1708.5**
**(Revenge Pornography)**

79. Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully incorporated herein.

14

80. Cal. Civ. Code § 1708.5 provides a civil right of action for damages against "a person who intentionally distributes by any means a photograph, film, videotape, recording, or any other reproduction of another, without the other's consent if –

> (1) the person knew that the other person had a reasonable expectation that the material would remain private,
> (2) the distributed material exposes an intimate body part of the other person, or shows the other person engaging in an act of intercourse, oral copulation, sodomy, or other act of sexual penetration, and
> (3) the other person suffers general or special damages as described in Section 48a."

81. Defendant Diplo knew that Plaintiff had a reasonable expectation that the intimate images and/or videos of her would remain private. Indeed, Plaintiff explicitly told Defendant Diplo that she did not want any intimate images and/or videos of her disclosed and/or distributed.

82. Defendant Diplo nevertheless distributed material which exposes an intimate body part of Plaintiff, including her genitalia and buttocks.

83. Plaintiff suffered general and special damages as a result of Defendant Diplo's conduct.

**COUNT III: VIOLATION OF CAL. CIV. CODE § 52.4**
**(Gender Violence)**

84. Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully incorporated herein.

85. Civ. Code § 52.4 provides a civil right of action for damages for a person who has been subjected to gender violence.

86. Under this section, "gender violence" means "[a] physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction."

87. As alleged herein, Plaintiff was the victim of Defendant Diplo disclosing and

distributing intimate visual depictions of her nude body, genital area, and buttocks, without her consent.

88. In committing the foregoing acts, Defendant Diplo subjected Plaintiff to a physical invasion of a sexual nature under coercive conditions.

89. Defendant Diplo knowingly conspired and/or aided and abetted to create conditions of coercion and control that caused Plaintiff to have her intimate visual depiction disclosed and distributed, in furtherance of committed acts of gender violence against Plaintiff.

90. The aforementioned conduct was willful, wanton, and malicious. At all relevant times, Defendant Diplo acted with conscious disregard of Plaintiff's rights and safety. Defendant Diplo also acted with knowledge and/or reckless disregard for the fact that his conduct was certain to cause injury and/or humiliation to Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment against Defendant Diplo on each of the above-referenced claims and Counts as follows:

a. That the Court award Plaintiff compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

b. That the Court award punitive or exemplary damages in an amount to be determined at trial;

c. That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

d. That the Court award pre- and post-judgment interest at the maximum legal rate;

e. That the Court award actual damages pursuant to 15 U.S.C. § 6851

f. That the Court award of liquidated damages in the amount of $150,000 from each of

16

Defendants violations pursuant to 15 U.S.C. § 6851;

g. That the Court grant all such other relief as it deems just and proper; and

h. That the Court retain jurisdiction of this matter to ensure all forms of relief it deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

DATED this 27th day of June, 2024

By: __/s/ Micha S. Liberty__
     Micha S. Liberty
LIBERTY LAW
California Bar No. 215687
1999 Harrison Street, Ste. 1800
Oakland, CA 94612
Tel: (510) 645-1000

Helene M. Weiss, *Pro Hac Vice Forthcoming*
MARSH LAW FIRM PLLC
31 Hudson Yards, 11th Fl
New York, NY 10001
Tel: (212)372-3030
Fax: (833) 210-3336
Email: heleneweiss@marsh.law

Cori J. Iacopelli, *Pro Hac Vice Forthcoming*
MARSH LAW FIRM PLLC
31 Hudson Yards, 11th Fl
New York, NY 10001
Tel: (212) 372-3030
Fax: (833) 210-3336
Email: coriiacopelli@marsh.law

*Attorneys for Plaintiffs*