Case 2:24-cv-05455-MRA-MAR   Document 46-9   Filed 11/12/24   Page 1 of 14   Page ID #:235

DocuSign Envelope ID: 361B62F6-456B-42FE-B280-B8CA1B78762F

Electronically FILED by Superior Court of California, County of Los Angeles 9/21/2022 12:57 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton, Deputy Clerk

1  Bryan J. Freedman, Esq. (SBN: 151990)
   Brian E. Turnauer, Esq. (SBN: 214768)
2  Tamar Yeghiayan, Esq. (SBN: 298473)
   FREEDMAN + TAITELMAN, LLP
3  1801 Century Park West, 5th Floor
   Los Angeles, CA 90067
4  Telephone: (310) 201-0005
   Facsimile:  (310) 201-0045
5  bfreedman@ftllp.com
   bturnauer@ftllp.com
6  tyeghiayan@ftllp.com

7  Attorneys for Petitioner Thomas Wesley Pentz

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| THOMAS WESLEY PENTZ, an individual, | CASE NO: 22STCP03439 |
| Petitioner, | |
| vs. | **PLAINTIFF THOMAS WESLEY PENTZ'S VERIFIED PETITION TO CONFIRM ARBITRATOR'S AWARD AND ORDER; MEMORANDUM OF POINTS AND AUTHORITIES** |
| MARCHEL GABRIELLE AUGUSTE, a.k.a SHELLY AUGUSTE, an individual. | |
| Respondent. | *[Declaration of Bryan J. Freedman, Esq. in support thereof concurrently filed herewith]* |
| | Hearing Date: May 3, 2023 |
| | Hearing Time: 9:30 a.m. |
| | Department: 12 |
| | Petition Filed: September 21, 2022 |

1

Petitioner Thomas Wesley Pentz, pursuant to California *Code of Civil Procedure* Section 1285 *et seq.* alleges as follows:

### I. PETITIONER COMMENCES THIS ACTION TO CONFIRM AN AWARD IN ARBITRATION

1. Petitioner Thomas Wesley Pentz ("**Petitioner**" or "**Pentz**") hereby petitions the Court for an order confirming the arbitrator's award in favor of Petitioner against Respondent Marchel Gabrielle Auguste ("**Respondent**" or "**Auguste**") made following contractually agreed upon binding arbitration and served on Petitioner on September 6, 2022. After seven (7) days in arbitration, in which six (6) witnesses testified, and dozens of exhibits were admitted and considered, the Honorable Judge Diane Wayne ("**Judge Wayne**" or "**Arbitrator**") at JAMS Services, rendered a twenty-four (24) page Final Award in favor of Petitioner (the "**Final Award**"). Among other things, the Final Award analyzed the relevant facts, made determinations of witness credibility, and issued a ruling against Auguste and in favor of Petitioner in the amount of **$1,246,494.97** in damages, attorneys' fees and costs. (A true and correct copy of the Arbitrator's Final Award is attached to the concurrently filed Declaration of Bryan J. Freedman ("**Freedman Decl.**") ¶13, Ex. B.

2. Auguste is an obsessive and unstable fan of Pentz, a celebrity record producer and DJ. She has a history of harassment and at least one permanent injunction for stalking issued against her. She is angered by the fact that her brief, consensual relationship with Pentz ended. She has also shown herself to be an extortionist, willing to publish numerous lies about herself and Pentz and risk civil and criminal exposure in a meritless effort to obtain as much money as she can, simply for having met and had consensual sex with a celebrity musician. **Her fifteen minutes of fame are now over**, however, as, more importantly, is her ability to harm Pentz and his family. After an Arbitrator listened to seven days of testimony from witnesses, including four days of testimony from Auguste, she found that Auguste is liable to Pentz for **$1,246,494.97** in damages, attorneys' fees and costs. In her Award, the Arbitrator stated the following about Auguste:

//
//

> "At the outset, the Arbitrator finds that **Auguste's credibility is lacking**. On many occasions, her testimony about the **circumstances of her relationship with Pentz was materially different from the documentary evidence presented**...The record evidence contains significant inconsistencies that **raise concerns about the believability of much of Auguste's testimony.** Though not dispositive, the Arbitrator also takes note of a February 2019 permanent restraining order issued against Auguste in connection with stalking and harassing a former employer, in which the Judge on record expressed unease about Auguste's perceived lack of respect for authority and ordered Auguste undergo a mental health evaluation...." Freedman Decl., ¶11, Ex. B. Pg.3, ¶2. (Emphasis added.)

3. Pentz is entitled to an order confirming the damages award of $500,000 pursuant to C.C.P. §1285 and to have judgment entered in conformity therewith pursuant to C.C.P. §1287.4. Pentz is further entitled to attorney's fees and costs of $746,494.97 pursuant to the Arbitrator's Final Award. Freedman Decl., ¶13, Ex B.

## II.   THE PARTIES AND VENUE

4. Petitioner Thomas Wesley Pentz, professional known as Diplo, is a world-renowned DJ, songwriter, and record producer based in Los Angeles, California.

5. Respondent Marchel Gabrielle Auguste a.k.a. Shelly Auguste is an individual residing in the County of Los Angeles, State of California.

6. Venue is appropriate in this Court because the subject arbitration was conducted in Los Angeles county pursuant to California *Code of Civil Procedure,* section 1292 and pursuant to the private Dual Restraining Order Agreement, negotiated and executed by the parties on or about January 9, 2021(the "**Dual RO Agreement**") (See Section 12 of the Dual RO Agreement requiring mandatory confidential arbitration) (a true and correct redacted copy of which is attached to Freedman Decl., ¶5, Ex. A) to be discussed further below.

## III.   THE PARTIES' BRIEF CONSENSUAL RELATIONSHIP

7. The Parties first met in or around 2017 over social media, when Auguste was an adult. The parties would at times exchange sexually explicit photos and videos of themselves to each other.

8. The two met in person in or around April 2019, when Auguste was an adult, and

engaged in voluntary sexual intercourse. The two met again in Las Vegas and again engaged in voluntary sexual intercourse and continued to exchange sexually explicit photos and videos of themselves with each other. The Parties eventually ceased all communications with each other.

### IV. DUAL TEMPORARY RESTRAINING ORDERS

9. On or about November 6, 2020, Auguste filed a petition in the Los Angeles Superior Court, Stanley Mosk Courthouse to obtain a Temporary Restraining Order ("**TRO**") and Permanent Restraining Order ("**RO**") against Pentz seeking to, among other things typically granted in a TRO and RO, restrain Pentz from distributing any image of Auguste's intimate body part, or an image depicting Auguste engaged in an act of sexual intercourse, sodomy, oral copulation, sexual penetration, or an image of masturbation involving Auguste, because Auguste alleged that Pentz posted a video and photograph of her vagina on the social application Twitter account named "Jeanne Yang" on October 28, 2020. ("**Auguste's Petition**"). Freedman Decl., ¶2.

10. On December 7, 2020, Pentz filed a petition in the Los Angeles Superior Court, Stanley Mosk Courthouse to obtain a TRO and RO against Auguste seeking to, among other things typically granted in a TRO and RO, to restrain Auguste from distributing any image of Pentz's intimate body part, or an image depicting Pentz engaged in an act of sexual intercourse, sodomy, oral copulation, sexual penetration, or an image of masturbation involving Pentz. ("**Pentz's Petition**"). Freedman Decl., ¶3.

11. Due to Pentz's popularity, Pentz's and Auguste's Petitions and the Court's granting of both TROs, were reported on numerous online news sources, including NBCNews.com, TMZ.com, TheDailyBeast.Com and UsMagazine.com. Freedman Decl., ¶4.

### V. THE DUAL RO AGREEMENT

12. On January 9, 2021, in advance of the scheduled January 12, 2021 court hearing on the Pentz and Auguste Petitions, the parties entered into the Dual RO Agreement ("**Dual RO Agreement**"), which was negotiated at arm's length by counsel for both parties. Freedman Decl., ¶6, Ex. A.

13. The Dual RO Agreement restrained each party from engaging in certain activities. See Freedman Decl., ¶6, Ex. A, ¶14, Ex C, Pg. 6, ¶3-5.

14. Paragraph 1.b.iii. of the Dual RO Agreement states:

> 1. **Dual Private Restraining Orders**. The Parties [Pentz and Auguste] agree to dual private restraining orders and agree to each of the following terms of the dual private restraining orders (the "**Dual Private RO**").
>
>   a. **Pentz Private RO Against Auguste**. Auguste agrees to the following RO ("**Pentz Private RO**").
>
>   i. Auguste agrees not to distribute, either directly or indirectly, (or post, either directly or indirectly, on social media) any image of Pentz's intimate and/or nude body part…
>   ii. Auguste agrees not to harass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, or block movements of Pentz and/or Jevon King and/or Celene Kabigting and/or Pentz's family members;
>   iii. Auguste agrees not to distribute or post (or repost/retweet), either directly or indirectly, on social media, or send any email to anyone, or any entity, ***anything whatsoever*** pertaining to Pentz and/or his professional name "Diplo" and/or Pentz's affiliated entities and parties and/or Pentz's Protected Persons through the date the Parties complete mediation…
>   iv. Auguste agrees not to create, or facilitate the creation of, any fake or anonymous social media accounts (or create any social media accounts) to, harass, attack, threaten, follow, stalk, disturb the peace or, keep surveillance of Pentz or Pentz's Protected Persons;
>   v. Auguste agrees not to contact, either directly or indirectly, in any way, including but not limited to, by telephone, mail, e-mail, or other electronic means including but not limited to social media such Instagram, Facebook and Twitter, Pentz or any of Pentz's Protected Persons:

15. Paragraph 5.a. of the Dual RO Agreement states:

> 5. **Pentz's Remedies for Auguste's Breach of Paragraph 1.b**.
>   b. **Liquidated Damages**. The Parties agree that any material breach or violation of Paragraph 1.b. of this Agreement by Auguste shall result in substantial damages and injury to Pentz, the precise amount of which would be extremely difficult or impracticable to determine, even after the Parties have made a reasonable endeavor to estimate fair compensation for such damages and injury. As such, if Pentz proves by clear and convincing evidence through arbitration (as set forth in Paragraph 12 below) that Auguste breached any of

the terms set forth in Paragraph 1.b., then Auguste shall be obligated to pay, and agrees to pay Pentz the sum of Fifty Thousand Dollars (US $50,000.00) as a reasonable and fair amount of liquidated damages to compensate Pentz for any loss or damage resulting from each proven material breach or violation of this section. The Fifty Thousand Dollars (US $50,000.00) liquidated damage applies to each and every proven material breach of Paragraph 1.b.

16. Paragraphs 6, 7 and 8 of the Dual RO Agreement states, in pertinent part, the following:

> **6. Non-Disparagement.** The Parties acknowledge that non-disparagement as set forth herein is a material term of this Agreement without which this Agreement would not have been made. Auguste agrees and acknowledges that as part of the material consideration for this Agreement, she will not, directly or indirectly, make, disseminate or publish any written, oral or electronically-transmitted statement that is false, disparaging or critical about this Agreement.
>
> 7.   **Confidentiality.** ….If asked to comment, reveal or disclose information related to this Agreement and/or the Parties' Petitions, including, but not limited to, the Confidential Information, absent a court order or other legal compulsion, the Parties agree to state only that: ***"The matters arising out of both Parties' TRO Petitions have been resolved."***
>
> 8.   **Remedies for Breach of Confidentiality or Non-Disparagement.**
>     **a.**   Auguste acknowledges that disparaging statements, as outlined in Paragraph 6, by Auguste about Pentz and/or his professional name "Diplo" and/or Pentz's affiliated entities and parties and/ or any of Pentz's Protected Persons…would constitute a serious and material breach of the terms of this Agreement by Auguste and shall result in substantial damages and injury to Pentz and/or his professional name "Diplo" and/or Pentz's affiliated entities and parties and/or Pentz's Protected Persons, the precise amount of which would be extremely difficult or impracticable to determine, even after the Parties have made a reasonable endeavor to estimate fair compensation for such damages and injury. As such, if Pentz proves by clear and convincing evidence through arbitration (as set forth in Paragraph 12 below) that Auguste is in breach of this Agreement for disparaging Pentz and/or his professional name "Diplo" and/or Pentz's affiliated entities and parties and/or Pentz's Protected Persons in violation of Paragraph 6; or for disclosing Confidential Information to any third party in violation of Paragraph 7 herein, then Auguste shall be obligated to pay, and agrees to pay, Pentz the sum of Fifty Thousand Dollars (US $50,000.00) as a

reasonable and fair amount of liquidated damages to compensate Pentz for any loss or damage resulting from each proven material breach or violation of Paragraph 6 and/or Paragraph 7 of the Agreement. The Fifty Thousand Dollars (US $50,000.00) liquidated damage applies to each and every loss or damage resulting from each and every proven material breach or violation of Paragraph 6 and/or Paragraph 7.

17. Paragraph 12 of the Dual RO Agreement states, in pertinent part, the following:

> **12.** **Mandatory Confidential Streamline Arbitration.** The Parties agree that the exclusive method for resolving any and all claims or disputes arising out of or related to this Agreement, including, but not limited to any claims or disputes concerning any breach of this Agreement (each an "**Arbitrable Dispute**"), shall be through mandatory arbitration. All Arbitrable Disputes must be resolved through confidential final and binding arbitration in Los Angeles County … in compliance with … the then existing JAMS Streamlined Arbitration Rules & Procedure (the "**Streamline Rules**") then in effect… The parties agree that the arbitration must be concluded, including the rendering of any award by the Arbitrators (the "**Award**"), not more than thirty (30) days following service of the demand for arbitration." See Freedman Decl., ¶6, Ex. A, ¶13, Ex B, Pg. 2, ¶3.

## VI. PENTZ PREVAILS IN ARBITRATION AGAINST AUGUSTE

### A. The Arbitration Demand.

18. Unfortunately, *shortly after signing the Dual RO Agreement*, Auguste started breaching the Dual RO Agreement by posting comments about her dispute with Pentz <u>in direct breach of several provisions of the Dual RO Agreement, which triggered several liquidated damages provisions in the Dual RO Agreement</u>. Freedman Decl., ¶7.

19. On April 20, 2021 Pentz filed his Demand for Arbitration against Auguste. Freedman Decl., ¶8.

20. On September 17, 2021, as Auguste continued breaching the Dual RO Agreement, Pentz filed an Amended Arbitration Demand alleging that Auguste breached the Dual RO Agreement on numerous occasions. Freedman Decl. ¶9-10.

### B. The Parties Arbitrate Pentz's Claims Over Three Months.

21. Over the subsequent seven months preceding the Arbitration hearing, the parties jointly selected the Honorable Judge Wayne (Ret.) ("**Arbitrator**" or "**Judge Wayne**") at Jams

Services, to serve as the Arbitrator, exchanged numerous documents, engaged in law and motion proceedings, and arbitrated the matter before Judge Wayne between December 8, 2021 and March 24, 2022. All parties were represented by experienced counsel, including Christina M. Coleman and Allison Schulman for Auguste. Bryan J. Freedman, Brian Turnauer, and Tamar Yeghiayan for Pentz. Freedman Decl. ¶10-13, Ex. B.

22. The Arbitration was conducted on December 8, 9, 2021, February 17, January 13-14, 28, and March 24, 2022, in Los Angeles, California. During the arbitration, the Arbitrator received the testimony of six (6) witnesses, considered dozens of admitted exhibits, and reviewed and considered lengthy pre-trial and closing briefs and the parties' responses thereto. Freedman Decl. ¶11.

### C. The Arbitration Award.

23. On September 6, 2022, after seven (7) days in arbitration, in which six (6) witnesses testified, and dozens of exhibits were admitted and considered, the Arbitrator rendered a twenty-four (24) page Final Award in favor of Petitioner (the "Final Award"). The Arbitrator carefully summarized the testimony of all witnesses and the arguments and positions of both Pentz and Auguste, and then set forth her findings in detail, including that the Dual RO Agreement was thoroughly negotiated and entered into at arm's length. Freedman Decl. ¶13, Ex. B.

24. The Arbitrator listened to days of testimony, and in her Final Award stated the following:

> "At the outset, the Arbitrator finds that **Auguste's credibility is lacking**. On many occasions, her testimony about the **circumstances of her relationship with Pentz was materially different from the documentary evidence presented**…The record evidence contains significant inconsistencies that **raise concerns about the believability of much of Auguste's testimony.** Though not dispositive, the Arbitrator also takes note of a February 2019 permanent restraining order issued against Auguste in connection with stalking and harassing a former employer, in which the Judge on record expressed unease about Auguste's perceived lack of respect for authority and ordered Auguste undergo a mental health evaluation…." Freedman Decl. ¶13, Ex. B. Pg.3, ¶2.

25. The Arbitrator's Final Award states:

   a. "Sometime between 2016 and 2017, Pentz and Auguste met over social media and began communicating consistently through Instagram…At the time, Auguste was 20

years old…" Freedman Decl. ¶13, Ex. B, Pg. 4, ¶2.

b. "On May 28, 2020, Auguste sent Pentz 14 messages via her shellymxoxo@gmail.com account, arguing she did not create the account that was harassing King. That day, King also received an Instagram message from user account trutells12 that included explicit photos and videos of Pentz and other women… King testified she was becoming scared and unsettled because of these messages and sent everything to Pentz, with a video of Pentz having sex with Kabigting. Though it was unclear who created the truthtells12 account at the time, Auguste admitted she had created it and sent the messages." Freedman Decl. ¶13, Ex. B, Pg. 5¶2.

c. "King testified she eventually reached out to Auguste, asking Auguste to leave her alone… Auguste took screenshots of her private Instagram conversations with King and posted them to her public account, manipulating King's comments to suggest King agreed with Auguste's allegations." Freedman Decl. ¶13, Ex. B, Pg. 5, ¶3.

26. The Arbitrator found the following postings by Auguste to be in breach of the Dual RO Agreement:

    a. Auguste's posting about her treatment by a "toxic vile man;"

    b. "I don't regret it one bit cause he had it comin;"

    c. "How people are ok with themselves knowing they emotionally destroyed someone;"

    d. "weird how me & Chantel Jeffries [who dated Pentz in last three years] get/have gotten the same guys;"

    e. "Marry A Man Who says things like:…I have never been a dj;"

    f. "I've moved on from music industry men..Athletes is where it's at;"

    g. "I gave my all to someone…still paying the consequences for it…you're nothing to me and I am above." Freedman Decl. ¶13, Ex. B, Pg. 14, ¶2.

27. The Arbitrator found that Auguste clearly testified that she had been receiving media inquiries from an estimated 20-25 media outlets, many through her social media accounts. Auguste was pointedly aware of the media's interest in – and closely tracking – her social media posts relating

to Pentz. Despite knowing this, Auguste suggested to the Arbitrator that each of the following posts at issue related to something else (e.g. song lyrics, her father, other men she's dated). The Arbitrator stated "But to suggest that theses posts from late 2021 through 2021 were not a continuation of Auguste's public campaign against Pentz is disingenuous." Freedman Decl., ¶13, Ex C, Pg. 14, ¶2.

28. The Arbitrator found that these breaches, taken as a whole, constitute one breach of 1(b)(ii) and (iii) restriction Auguste from harassing, or posting directly or indirectly about Pentz, and one breach of Section 6 restricting Auguste from disparaging Pentz on social media prior to the completion of mediation. Freedman Decl., ¶13, Ex C, Pg. 14, ¶3.

29. On April 30, 2021, after Pentz filed his civil complaint against Auguste, Auguste launched into a tirade of new postings on her Twitter and Instagram, such as:

    a. Calling Jevon King a "side bitch;"

    b. Calling Jevon King and her newborn son a "Side bitch [with] a bastard son;"

    c. Calling Pentz a "criminal, a rapist, and comparing him to R. Kelly and Jeffrey Epstein;"

    d. Some of the posts also indirectly reference the Agreement, falsely suggesting that it was a tool to force her against her will to be silenced by Pentz and his counsel.

Freedman Decl., ¶13, Ex B, Pg. 14, ¶2.[1]

30. The Arbitrator found that the "majority of the posts in her April 30, 2021 rant were wholly unrelated to the legal proceeding – they were personal attacks against Pentz and King posted to her social media accounts. These posts were a clear violation of Section 1(b)(ii). To suggest otherwise is absurd." Freedman Decl., ¶13, Ex B, Pg. 16, ¶2.

31. The Arbitrator found in favor of Pentz. Freedman Decl., ¶13-14, Ex. B.

### D. The Damages Award.

32. The Arbitrator ruled that:

    a. Auguste must pay Pentz $500,000 in damages;

    b. Auguste must pay Pentz $554,290 in attorney's fees; and

---

[1] The remainder of Auguste's breaches of the Dual RO Agreement can be found in the Arbitrator's Final Award. Freedman Decl., ¶13, Ex C.

        c. Auguste must pay Pentz $192,204.97 in costs and expenses.

Freedman Decl., ¶13-14, Ex. B.

33. Petitioner now commences this action to seek to confirm the Final Arbitration Award and, and to have judgment entered thereon pursuant to Code of Civil Procedure Section 1285, et seq.

## VII. SERVICE OF THE AWARD

34. On September 6, 2022, the Arbitrator served her Final Award on all of the Parties. (See Freedman Decl., ¶15, Ex. C).

## MEMORANDUM OF POINTS AND AUTHORITIES

## VIII. ARGUMENT

### A. The Court Should Confirm The Arbitrator's Award

California *Code of Civil Procedure* section 1285 states that "any party to an arbitration in which an award has been made may petition the court to confirm…the award." "If a petition…under this chapter is duly served and filed, **the court *shall* confirm the award as made**, whether rendered in this state or another state, unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding. (See Cal. Civ. Proc. Code § 1286.)

California courts cannot review the merits upon which an arbitrator's decisions are based. "The merits of the controversy between the parties are not subject to judicial review." (*Straus v. North Hollywood Hospital, Inc.* (1957) 150 Cal.App.2d 306, 310; see also *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 [California Supreme Court held that "an arbitrator's decision cannot be reviewed for errors of fact or law….When parties opt for the forum of arbitration they agree to be bound by the decision of that forum"]; *Riley v. Pig'n Whistle Candy Co.* (1952) 109 Cal.App.2d 650; *Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415 ["An arbitrator's decision cannot be reviewed for errors of fact or law"].)

California case law is clear that an arbitrator's orders and decisions cannot be reviewed for their merits, even if such order and decisions contain errors of law and fact. While, in this case, the Arbitrator was factually and legally justified in issuing his Final Arbitration Award and Fees/Costs Award, this Court does not have the authority to even consider an argument refuting as such.

Under California law, "[e]very reasonable intendment will be indulged to give effect to arbitration proceedings." (*Straus v. North Hollywood Hospital, Inc.* (1957) 150 Cal.App.2d 306, 310.) Where the parties enter into a contract with an express arbitration clause, such clauses "are to be construed like other contracts so as to give effect to the intention of the parties, the presumption being that all matters in dispute were intended to be decided. (*Id.*) "The burden is on the party objecting to the award to show affirmatively that error was committed by the arbitrators." (*Government Employees Ins. Co. v. Brunner* (1961) 191 Cal.App.2d 334, 337.)

**B.    Petitioner is entitled to the Costs Associated with Having to File this Petition to Confirm the Arbitrator's Award**

Costs incurred in judicial proceedings to enforce an arbitration award or order are recoverable by the prevailing party as a matter of right. (See Cal. Civ. Proc. Code § 1293.2; *Austin v. Allstate Ins. Co.* (1993) 16 Cal.App.4th 1812.)

**PRAYER FOR DAMAGES**

WHEREFORE, Petitioner prays for the following relief:

A.    For an order confirming the Arbitrator's Final Award;

B.    For entry of a judgment in favor of Pentz and against Auguste in conformity with the Arbitrator's Final Award;

C.    For an award of reasonable attorney's fees incurred in bringing this Petition according to proof;

D.    For costs of suit incurred in bringing this Petition according to proof; and

E.    For such other and further relief as the Court may deem just and proper.

Dated: September 21, 2022                FREEDMAN + TAITELMAN, LLP

By: _____
Bryan J. Freedman
Brian E. Turnauer
Tamar Yeghiayan
Attorneys for Petitioner
Thomas Wesley Pentz

## VERIFICATION

STATE OF CALIFORNIA    ]
                      ] ss.
COUNTY OF LOS ANGELES ]

    I, Thomas Wesley Pentz, have read the foregoing **THOMAS WESLEY PENTZ'S VERIFIED PETITION TO CONFIRM ARBITRATION AWARD AND ORDER** and know its contents. I have read the foregoing document, and the matters stated therein are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed on September 20, 2022 at Los Angeles, California.

*/s/ Thomas Wesley Pentz*
Thomas Wesley Pentz

**VERIFICATION**

## PROOF OF SERVICE

**STATE OF CALIFORNIA**      ]
                             ] ss.
**COUNTY OF LOS ANGELES**    ]

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1801 Century Park West, 5th Floor, Los Angeles, California 90067.

On **April 7, 2023**, I served the foregoing document(s) described as:

**PLAINTIFF THOMAS WESLEY PENTZ'S VERIFIED PETITION TO CONFIRM ARBITRATOR'S AWARD AND ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties in this action as follows:

| *Via Electronic Mail Only* | *Via Electronic Mail Only* |
|---|---|
| Allison M. Schulman | Christina M. Coleman, Esq. |
| 1055 W. 7th St., Suite 1920 | 5757 Wilshire Blvd., Penthouse 5 |
| Los Angeles, CA 90017 | Los Angeles, CA 90036 |
| Email: Allison@allisonschulman.com | Email: christina@christinacolemanlaw.com |

☒ by transmitting via electronic mail the document(s) listed above to the addresses set forth below on this date from cdavis@ftllp.com to Allison Schulman at Allison@allisonschulman.com and Christina Coleman at christina@christinacolemanlaw.com. The transmission was completed without error.

☒ **State**. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **April 7, 2023** at Los Angeles, California.

DocuSigned by:
*Cortni' Davis*
4E06F15E9A69408
Cortni' A. Davis